The next case called is agenda number 10, case number 122598, People v. Young. Appellant, when you're ready, you may proceed. May it please the court. Good morning, your honors. Good morning, counsel. My name is Jason Jordan. I'm from the Appellant Defender's Office, and I represent Nelson Young. The issue here is whether claims for credit for time served, which I call liberty credit claims, whether those types of claims, like per diem credit claims, can be raised for the first time in a collateral appeal. Now, as of right now, because of an error in math on the minimus, Nelson Young, my client, will spend an additional six months in prison, despite the fact that this mathematical error on the minimus has been brought to the attention of a reviewing court, and despite the fact that the state has already conceded that Mr. Young is entitled to more credit. This court should address Young's liberty credit claim for three reasons, efficiency, uniformity, and equity. First, I'd like to talk about judicial efficiency. In People v. Caballero, this court had to decide whether per diem credit claims could be raised for the first time in collateral appeals. In reaching its decision, this court looked to cases dealing with liberty credit claims, some which had addressed the liberty credit, some which had not. This court found that the cases addressing the liberty credit claim were more persuasive and better reasoned than the cases declining to address those claims. And so the overall factor in Caballero was that it's a promotion of judicial economy to address these sorts of ministerial and simple matters in the appellate court. Caballero reasoned that, quote, the Caballero court reasoned that, quote, granting the credit is a simple ministerial act that will promote judicial economy by ending any further proceedings over the matter. Liberty credit. Can I just start the conversation here? This is a final judgment, correct? The conviction judgment was a final judgment, correct? The conviction is the final judgment. And we have rules about how to attack a final judgment, correct? Correct. And they generally revolve around either the Post-Conviction Act or 214.01. And in that context, we have statutory concerns and certainly a great deal of case law, understanding finality of judgments and what can be attacked and what can't be, how waiver and res judicata play into all of this, when those ideas can be relaxed, cause and prejudice tests. And we have, you know, years and years and years of being very careful about how we look at final judgments. Is efficiency a reason to wipe all that away? No. In fact, addressing it in appellate court protects the final judgment. It protects the integrity of the sentence. I'm not saying this, but what about, we talk about cause and prejudice. We talk about res judicata and waiver. Should we just forget about those concepts? No, on direct appeal for DM and liberty credit is not submitted to the normal rules of forfeiture and waiver. As far as jurisdiction. But how about post-conviction? In a post-conviction, the act under the petition of the Post-Conviction Act, arguments that could have been raised and were not raised before are barred by waiver or res judicata. Are they not? That's correct. Then why should we relax those rules here? For the same reason that the Caballero Court relaxed those rules in Caballero to address per diem credit. And the intent of the legislature is that these two types of credit would be treated the same. In Caballero, this court said that it recognized that it was not a cognizable claim under the Post-Conviction Hearing Act. But nevertheless, in the furtherance of judicial efficiency, because it could be raised in the future, this court decided to address it. Likewise, liberty credit claims can be claimed in the future. And so it's the efficiency of the court and the judicial system would require that it be addressed when it's raised before a review in court. But unlike Caballero, that raised the issue in post-conviction, isn't it? In this case, it wasn't raised until appeal from the post-conviction. Is that right? Can you restate that, Your Honor? I said in this case, the issue was raised in the appeal from the post-denial of the post-conviction petition. Isn't that correct? In this case? Yes. Yes, it was raised for the first time on appeal. But in Caballero, it was raised in the petition, the PC. Isn't that correct? That's not my memory of the issue. I'd have to go back and look. I can answer. I have Caballero on my desk. I can come back and answer that question. And my question would be, does that make a difference? Whether or not it's raised. Right. And whether we should address it. It should be treated like per diem credit. These two types of credits should be treated the same. And for per diem credit, that's not the case. It can be raised at any time in any court. It's a ministerial function that for here, Mr. Young was sentenced to 40 years in prison. Right now, he's going to serve 40 years and six months. So actually correcting the minimus is actually preserving final judgment. The decision not to correct the minimus is actually the decision that's actually changing the final judgment of the court. Is this still a simple ministerial act if the state is opposing the simple correction with a different number? Is that simple? Yeah, that's where the language of Caballero that it has to be clear and available for the record, that comes into play here. So two things with that. We would argue that it is clear and available for the record because after Mr. Young was arrested for murder, he was never released. The state is contending about 14 days of time from April 6th to April 20th. I can't remember the year right now, but there was a suicide attempt and there was some psychiatric treatment. Correct. So first, he was never released in this case. Second, if this court determines that it's not clear and available for the record, then give him the five and a half months. Give him the six months minus the 14 days because the state's not contending that part. And so that language from Caballero would further deficiency too because it would stop disputes about factual questions. If it's not clear and available from the record, on the face of the record, then you don't do it. So in that scenario, if those two weeks out of the six months are unclear, if this court determines they're unclear, we would just ask for the five and a half months instead. Back to efficiencies, I see that the state has no strong objection to your alternative relief, which is a supervisory order, right? Could you repeat that, Your Honor? Did you have alternative relief, a supervisory order? Yes. You're requesting, and I don't think the state has any problem with that. Didn't the appellate court in this case remand to the trial court on other issues? That's correct, Your Honor. So would, at least since we were talking about efficiencies, is the most efficient thing to do in light of the fact that the state has no objection is to issue a supervisory order directing this issue to be looked at at the trial court along with the other issues the appellate court has already sent there? It's not a, if it's, that's where the clear and available from the record standard comes in. It's not as if there needs to be a factual determination made. If it's not clear, it's not clear from the record, then the efficient thing would be for appellate courts to address it, for appeals courts, even in light of a remand like that, Your Honor. Right. I'm asking if this court should issue a supervisory order. In the alternative, we would ask that Mr. Young gets his six months of credit, Yes, Your Honor. It's back in the trial court now, right? I believe it's waiting on this. Right. But there are issues that will be addressed by the trial court per the appellate court order. That's correct. The issue there is the recharacterization of a 214-01 position as a post-conviction position. Is there anything in the record that explains why, when the defendant was convicted in 06, and then he filed a PC in 09, and that was dismissed, and that was appealed, and then he filed this other pleading, whether it's a PC or 214-01 in 14. None of this was raised. So he had lots and lots of time and lots of opportunities and process to raise this issue until appeal from the successive PC or whatever we're going to characterize it as. Is there anything in the record that explains to us why all these years passed by before this simple ministerial issue was raised? Not that I'm aware of, Your Honor, but whatever. So basically he had his final judgment, and years and years and years later, that case would then go perhaps to the appellate court to fix these numbers. Is that the scenario you see? Is there no finality? Is there any time when it's over? Yes, when the appellate court addresses it. Then it's over, and it's over finally. And that's why the appellate court should address it. So we're already in the appellate court. Something's going to have to be filed. Substantive brief. For caviar issues, we get it. Indulge me. I mean, it was once in the appellate court before, and this wasn't raised. I mean, if this was such an important issue, it was clear the facts were all there. I mean, all the ideas we talk about in terms of waiver or res judicata were all there, and yet process, post-conviction review, collateral review, appeal, never raised there. How many times do we go through this before it's really final? Well, if appellate courts can't address it, then it still won't be final because he can raise it again in the trial court to do a motion to amend a minimis. At that point, that could be denied, and that could be appealed, and that could be another issue. And under the state's approach, putting aside the proposed new rule, for a long time appellate courts have addressed these types of issues. They've used different rationales, Rule 615B, Rule 366, the Wait Sentence Rule. They've cited caviar. They've cited the rationale that you can do a motion to amend a minimis at any time. If that all goes away, then under the state's approach, what's going to happen is the avenue will be mandamus in this court. Pro se filings from prisoners to correct sentence credit issues. That would be very inefficient for this court. The way to end the matter is to let the appellate court decide it once and for all, and it's really not that inefficient. If you look at caviar claims for per diem credit, it's often one or two pages in an appellate brief. The state concedes because the law is clear. We're asking that liberty credit claims are treated the same as per diem credit claims. If I could just touch on the state's proposed new rule, that would definitely be inefficient because they want to create an entire new cause of action that would resurrect some version of the Wait Sentence Rule that all types of sentences that didn't conform to a statute could now be raised in the trial court in perpetuity outside the rules of the 30 days of jurisdiction and things like that. So that would encourage piecemeal litigation, double the amount of parties that could attack complaints in the future and exponentially increase the type of errors that could be litigated. So that's definitely inefficient. And I think one reason is that these should be treated the same is that they're organically similar. They're united. You can't have one without the other. Per diem credit is predicated upon liberty credit. It necessarily springs from it. And so that brings me to my last point of equity. What if Mr. Young had some credible fines that his extra six months that we're asking for could have helped to wipe those out? Under the state's approach, we could get out the money, but we couldn't get out these six months of time that he's already served. And so that would be inequitable to pay for the money over the more significant liberty interest about spending an extra or serving part of your sentence twice, six months of your sentence twice. So this is a mathematical error on a minimus. These kinds of things can be done to fix per diem credit at any time in any court. We would just ask this court to extend that same logic or make clear that that logic does extend to liberty credit claims. And in the absence of that, the only remedy for Mr. Young, well, not for Mr. Young, but for future situated prisoners, would be mandamus. So we would ask you that this court would address it. Are there any further questions? Seeing none, thank you. May it please the Court. I'm Assistant Attorney General Daniel Lewin on behalf of the people. Because defendant's claim for pre-sentence custody credit was forfeited, the appellate court appropriately declined to consider it, and this court should affirm. And if this court is inclined to grant defendant relief, it should do so using its supervisory powers or by changing its rules to allow parties to correct illegal sentences by motion in the circuit court. So defendant asked the appellate court to increase his pre-sentence custody credit on an appeal of a totally unrelated 214.01 petition. But before doing so, he forfeited his claim in virtually every way he could have. The claim was apparent on the face of the record at the time of the sentencing hearing, which means he needed to make a contemporary objection, but he didn't. Is this the case where the judge says 216 days, right? Yes, Your Honor. And everybody's in the moment? Correct. And after the circuit court ruled 215 days of credit, defendant filed a post-trial motion challenging the sentence but not the credit. So this is the sort of claim that needed to be objected to contemporaneously, and for the same reason it's the type of claim that needs to be raised on direct appeal and not collateral appeal, but he didn't raise it there. If he wanted relief from a 214.01 petition, he had two years after judgment to file it, but he waited until eight years after judgment to file it. And perhaps most importantly, he didn't raise his pre-sentence custody claim in the 214.01 petition, which meant that it wasn't appropriately raised in the appellate court on appeal from the denial of the 214.01 petition. So any of these forfeitures or procedural violations would independently justify the appellate court's decision in this case, and therefore the only way defendant is entitled to relief is if pre-sentence custody credit is immune to all procedural rules. And we have a framework for deciding whether claims can be immune from procedural rules. It's voidness claims can, and voidableness claims cannot. And when this court abolished the void sentence doctrine in People v. Castleberry, this court explained that challenging something as violating a statute is not a voidness challenge. It has to be raised in compliance with the procedural rules. So the defendant here is not arguing that the circuit court lacked jurisdiction to give him only 215 days of pre-sentence custody credit. He's not arguing that his conviction is void ab initio. He's making a voidableness claim, and therefore it has to comply with procedural rules. Defendant's main argument to the contrary is that this court should extend People v. Caballero to this case, essentially arguing that the facial similarities between the per diem $5 a day credit should also apply to pre-sentence custody credit. But the reason Caballero doesn't apply to this case is because it was a statutory interpretation case. The Section 11014A $5 a day credit is available to defendants only, quote, upon application of the defendant. And the court in Caballero was tasked with interpreting what application of the defendant means. It ultimately concluded that because the application language wasn't qualified in any way, it didn't describe when and where the application had to be made, that the General Assembly had decided to allow the application in any court in any procedural posture, which meant that, and in response to Justice Garvin's question, it was raised in Caballero for the first time on appeal for the denial of the 214-01 petition. But this court explained that his appellate briefing could double as this statutory creature called an application of the defendant, and therefore even though it wouldn't have been procedurally appropriate for a defendant to try to raise the per diem credit in a post-conviction appeal, both because it's a statutory claim and not cognizable on post-conviction, and because it was raised for the first time on appeal and therefore waived. Notwithstanding all of that, what defendant was doing was applying for a totally different statutory credit. He was filing something called an application of the defendant. It just happened to be in a post-conviction appellate briefing. Mr. Lewin, in light of the fact you've asked for a change in the rules, after the Bacallis case, this has been referred to rules. Is there any reason since presumably, maybe in the not-too-distant future, the only defendant that might be affected by this decision as a result of that is this defendant? Is there any reason why this court, in light of the fact that it's already going back to the circuit court? I know you have opposing counsel would indicate that this record is clear on the amounts and whatnot. If we don't find the record clear, there could be a hearing in the trial court. Wouldn't that be the most prudent action to take here? We think ultimately supervisory relief is the correct way to get defendant his credit, but we think a ruling on the merits, affirming the appellate court, will have important ramifications for jurisprudence in the state. Litigants need to know whether this type of claim in the future can be raised on appeal. Even if the Rules Committee approves a rule change, and it's not clear that they would, but even if they did, if Caballero is still out there and there's no ruling on the merits in this case, litigants may still think that they can raise credit claims in any court at any time. What we have below here is a four-district to one-district split, and so in the first, second, third, and fifth districts, litigants might still try to raise these claims on appeal. We think that that, for the first time on appeal, we think that that would be inefficient. So we would request a ruling on the merits as to the procedural issue, but in terms of the substance, yes, Your Honor, the most efficient way is through supervisory relief, and the supervisory relief that we think is best is to send it back to the state. And your position would be that if and until there would be a rule change, that the only proper action by a defendant would be mandamus? Correct. It's possible that there would be a way to do it through revestment jurisdiction in the circuit court if the state didn't oppose any piece of it, but mandamus is the clearest way to do it. It's a nondiscretionary duty of the circuit court, and so it would operate the same way as the state trying to get an omitted or incorrect MSR term would be mandamus in this court. So, touching briefly on if this court is inclined to address the merits of the procedural rules, defendant's argument is that the per diem credit and the pre-sentence custody credit are facially similar because they both involve counting the days that the defendant spent in jail before trial, but that facial similarity has to give way to the statutory difference. Caballero held that application of the defendant was the language that allowed the defendant to raise this claim for the first time on appeal. That language doesn't appear in the pre-sentence custody credit statute, either the one that was in effect at the time the defendant was sentenced, which was 587B, or the one that prevails today, which is 54.500B. So the statute has to come first there. And any incongruity in allowing one type of credit to be raised for the first time on appeal and not allowing the other, this court has rejected similar claims about incongruities in cases like People v. Thompson, where this court explained that facial and as-applied constitutional challenges have to be treated differently for purposes of whether they can be filed in an untimely 214.01 petition. Even though they're both designed to protect constitutional rights, they're not interchangeable, and those differences take precedence over the facial similarities of the claims. Similarly, the point about whether it's most efficient to raise it in the appellate court versus the circuit court, we think categorically it's more efficient to raise claims in the circuit court than the appellate court. And while it's true at the micro level that the fastest time to resolve a claim is right after it's raised, there's the macro level concern about telling litigants that they're allowed to wait until collateral appeal to raise certain claims. Because when we reduce that urgency of raising the claim in a procedurally appropriate setting, that is, objecting right at sentencing or raising it on direct appeal, claiming that your trial counsel was ineffective in a post-conviction petition, when we tell litigants that they don't have to follow those procedures, they will wait until collateral appeal, which represents a systemic drain on the efficiency in our judiciary. So ultimately, the micro efficiency gains are vastly outweighed by the macro efficiency losses, which is why we think this court should enforce its rules of forfeiture, which are designed to protect efficiency. Touching briefly on the alternative forms of relief, as Justice Thomas noted, we don't oppose supervisory relief, but we do have this dispute about between April 6, 2006 and April 20, 2006. It's under Section 587B and, again, still today, 54.500B. Credit is discretionary for time spent before trial in psychiatric treatment, and it's creditable only upon a finding that the treatment was custodial. And so the circuit court is best positioned to determine whether the defendant was actually ever sent to psychiatric treatment in those two weeks, making a finding that it was custodial, and then making the discretionary decision whether to give the credit. So while defendant suggests here that he'd be willing to just accept two weeks fewer or two weeks less credit, we still think the most efficient way to do this is send this back to the circuit court, which already has proceedings to give the Pearson admonishments going forward. The other alternative form of relief we propose is a rule change. As Your Honors have noted, our rule change proposal has already been referred to committee, so any policy disagreements we may have here in the arguments or in the briefings can and will be hashed out before the Rules Committee in making these decisions. We bring the claim here, or the rule change proposal here, just to note that this is yet another application of how the rule change proposal could work. It's designed primarily to resolve the void that's come in the wake of the abolition of the void sentence doctrine, but it could also apply to a case like this and the hundreds of other cases that are similarly situated to it. Defendants who have a problem with their pre-sentence custody credit would be able to go back to the circuit court, which is best positioned to resolve these claims because they can take evidence, resolve factual disputes. There never has to be a remand from the circuit court to a lower court, which would be the case of the appellate court at a factually contentious claim. Circuit court, we note in our brief, we have a policy preference that claims be resolved in the circuit court. It's built into the structure of our judiciary that circuit courts have original jurisdiction and appellate courts have only appellate jurisdiction. We want these claims in the circuit court as opposed to the patchwork of different remedies that have come about after the abolition of the void sentence doctrine. And if this court has no further questions, we'd ask that this court affirm, and if it grants substantive relief to do so under its supervisory authority or rule change. Thank you. Thank you. Rebuttal. May it please the court. First off, I think opposing counsel points out a good fact about the first district, second district, third district, and fifth district all address these types of claims. In those districts, a motion to amend minimus can be made at any time, and those courts say that part of doing that is correcting liberty sentence credit. In fact, Cavier, of course, found People v. Andrews persuasive when this court analyzed that case, and that's exactly the rationale of People v. Andrews. So should it be done in the circuit court? Well, that's kind of the point. It can be done in the circuit court in the future. So why not just end the matter now like this court did in Caviero? That is what is judicially efficient. Now, if there's factual questions and remands are needed, that would not be efficient to start having remands for factual questions and things like that. That's where that language of clear and available from the record limits the scope of these types of claims. If it's not clear and available, then it should not be remanded or some sort of factual determination made. If the state has already conceded, Mr. Young is entitled to more credit. They're challenging two weeks. If this court doesn't think it's clear that he was in custody after he was arrested for murder, then we can ask the court. Can you point to anything in the record? The dispute as to the amount of the pre-sentence custody credit, right? There is a dispute, and you're just saying if we find the dispute in the state's favor and we're inclined to issue a supervisory order, just knock out the two weeks rather than send it back? Correct. And the alternative, we would ask for the supervisory order, that if this court finds those two weeks are unclear, then don't address it because we don't want these types of factual determinations to have to be made in order to protect judicial efficiency like Caviero. Is there anything you can point to in the record to indicate that the amount of pre-sentence custody credit that you're asserting is clear from the record, or are you acquiescing that the state might have a good claim that those two weeks are at issue? He was arrested for murder, and he was never released, and then he was sentenced. So all he needs is two days when he was arrested and when he was sentenced, and you add everything together. That also demonstrates how ministerial of an issue this is. He wasn't released after he was arrested for murder. So these claims can be done in the future, and because they can be done in the future in four of our districts, then a health court should just handle them when they're raised for the first time on appeal. I would agree with the opposing counsel when he clarified that the per diem claim that Caviero was raised for the first time on that appeal. This is not about the void sentence doctrine. This is not about voidable versus void. Your opposing counsel argued that we're seeing all of these cases, mandatory supervised release, fines and fees, credit. We're seeing this because of Castleberry and the evolution of the void sentence rule, whatever that means. Is that why we're seeing all these cases? What happened three years ago, five years ago? We weren't seeing these kind of cases. What's changed? Well, what's changed for credit is that the Fourth District decided that in the wake of Castleberry, they were no longer going to address liberty credit claims pursuant to the void sentence doctrine. But the appellate court, the Fourth District, is not in line with all the other districts, which say this is a motion to an indemnitimous, which can be made at any time. And so that's why the Fourth District has declined to do this. Under the Fourth District and the state's approach, these kind of claims have been raised for a long time in appellate courts and addressed for a long time. They're not going to be addressed anymore. As the state says, it'll be mandamus, and that's going to be very inefficient. So the state admits that these kind of claims can be settled in the future. That's why it should be addressed when it's raised for the first time in a collateral appeal because it's a simple and ministerial act. As far as the language of only application, we would disagree with that. You can apply for liberty credit claims. The state concedes you can apply for a liberty credit claim on direct appeal. That's an application. So if under the state's approach there will still be issues, there will be mandamus, but also hypothetically you could have the issue where there'd have to be case law developing. Well, what about 21401s versus post-conviction petitions? Because in 21401s, Rule 366 would apply, and that has some really broad language in it. So if I could quote Rule 366, the power of the appellate court is to exercise all or any powers of amendment of the trial court. And so under the state's approach, getting rid of all the previous rationales for addressing these types of claims, then that's going to create new case law. Well, what about 21401 versus PC? What can happen there? So forth and so on. So judicial efficiency, uniformity, equity, this is a really important right. He's going to serve six months of his sentence twice. The way to protect the final judgment in this case is just to fix it. Caballero claims are often a couple pages in a brief. The state often concedes. Per diem is an offspring of liberty credit. So per diem and liberty credit should be treated the same. And also I'd just like to point out there's three statutes that I cited at the beginning of my opening brief that the legislature is using shall, mandatory language, that these shall be aborted. So if there's no further questions, then we would ask that this court hold that pursuant to Caballero, our liberty credit claims can be addressed. And I warned my client the extra six months of time that he's already served. Thank you. Thank you. Case number 122598, People versus Young, will be taken under advice for this agenda number 10. Mr. Jordan and Mr. Lewin, we thank you for your arguments this morning. You are excused with our thanks.